UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**STONELAKE CONDOMINIUM**
**ASSOCIATION, INC.**

                                   **CIVIL ACTION**

**VERSUS**

                                   **NO. 23-279-JWD-SDJ**

**CERTAIN UNDERWRITERS AT**
**LLOYD'S LONDON, ET AL.**

**RULING ON MOTION TO COMPEL ARBITRATION**
**AND STAY THE PROCEEDINGS**

      Before the Court is a *Motion to Compel Arbitration and Stay the Proceedings* ("Motion") brought by Certain Underwriters at Lloyd's London, Indian Harbor Insurance Company, Lexington Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, United Specialty Insurance Company, General Security Indemnity Company of Arizona, HDI Global Specialty SE, Old Republic Union Insurance Company, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company (collectively, "Defendants" or "Insurers"). (Doc. 8.) It is opposed by plaintiff Stonelake Condominium Association, Inc. ("Stonelake" or "Plaintiff"). (Doc. 11.) Defendants filed a reply. (Doc. 16.) The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the Motion is granted.

    **I.    BACKGROUND**

      Stonelake is a condominium association formed as a Louisiana non-profit corporation doing business in Ascension Parish, Louisiana. (Doc. 1 at 1; Doc. 11 at 1.) The condominium properties located at 8000 Stonelake Avenue in Baton Rouge, Louisiana, consist of "10 separate

buildings, each with its own roof structure and roofing system." (Doc. 1 at 3.)[1] Plaintiff alleges that Defendants provided insurance coverage on the condominium buildings. (*Id*.)

Defendants are 11 foreign and American insurers/underwriters insuring the condominiums under a surplus line commercial policy bearing account No. 846523 (hereinafter, the "Policy").[2] (Doc. 10-1.)

According to Plaintiff, the roofs of the individual condominium buildings suffered hail and windstorm damage on April 14, 2021, (Doc. 1 at 3), and, despite "receiving satisfactory proof of loss, Defendants failed to tender payment for the damages . . . ." (*Id*. at 4.) Plaintiff sues Defendants for the recovery of the amounts due for repairs and, in addition, for bad faith damages under La. R.S. § 22:1973 and/or La. R.S. § 22:1892. (*Id*. at 4–5.)

## II. ARGUMENTS OF THE PARTIES

### A. Defendants

Defendants contend that the Policy insuring Stonelake's property contains a mandatory arbitration provision. (Doc. 8-2 at 2 (citing Doc. 10-1 at 42).) This provision, argue Defendants, is enforceable through the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") because, under 9 U.S.C. § 202, the arbitration provision "arises out of a commercial relationship, it is not entirely between citizens of the United States, involves performance abroad, and has a reasonable relationship with foreign states." (*Id.*) Defendants therefore seek an order of this Court, pursuant to 9 U.S.C. §§ 201 and 206, requiring Stonelake to submits all claims to arbitration. (*Id*.)

---

[1] In briefing, Plaintiff alleges there are 11 buildings. (Doc. 11 at 1.)
[2] The Policy and Arbitration Demand Letter were originally attached to the Motion as Docs. 8-3 and 8-4, respectively. They were re-filed as Docs. 10-1 and 10-2 in order to comply with Middle District local rules. Even though briefing refers to the earlier filed documents, the Court will refer to the document numbers of the correctly filed documents for clarity and consistency.

Alternatively, Defendants argue that the arbitration provision is enforceable under the Federal Arbitration Act ("FAA") "because the Policy is a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract, including the refusal to perform the whole or any part of the contract." (*Id*.) Thus, Defendants seek an order of this Court pursuant to 9 U.S.C. § 4 requiring arbitration and an order pursuant to 9 U.S.C. § 3 ordering a stay pending the conclusion of arbitration. (*Id*. at 2–3.)

### B. Stonelake

Stonelake argues first that under the Policy's Contract Allocation Endorsement (Doc. 10-1 at 5), the Policy must be "constructed as a separate contract between the insured and each of the Underwriters[,]" and thus, the Policy "requires that the insurers be viewed and treated separately." (Doc. 11 at 4–5 (citing Doc. 10-1 at 5).) So, while the Defendants who are foreign based underwriters may be able to enforce the arbitration provision through the Convention, this is not so as to "the ten U.S.-based insurers." (*Id.* (citing *Port Cargo Serv., LLC v. Certain Underwriters at Lloyds's London*, No. 18-6192, 2018 WL 4042874, at *3 (E.D. La. Aug. 24, 2018); *City of Kenner v. Certain Underwriters at Lloyd's London*, No. 21-2064, 2022 WL 307295, at *2 (E.D. La. Feb. 2, 2022)).) Rather, the U.S.-based insurers are subject to Louisiana's "reverse-preemption" rule, which renders the arbitration provision null and void under Louisiana law. (*Id.* at 4 (citing La. R.S. § 22:868(A)(2); *McDonnel Grp., LLC v. Great Lakes Ins. Branch SE, UK Branch*, 923 F.3d 427 (5th Cir. 2019)).)

Second, Stonelake maintains that, given the "drastically changed" market for casualty insurance in Louisiana and the resulting unequal bargaining power between the parties, the Policy is an unenforceable adhesionary contract. (*Id.* at 5–6.)

Stonelake's third and final argument is that it is entitled to the benefit of Louisiana law requiring insurance policies to contain an "appraisal clause." (*Id.* at 6–7 (citing La. R.S. § 22:1892(G)).) Thus, argues Stonelake, appraisal "should have been made available to it before arbitration was invoked." (*Id*. at 7.)

### C. Defendants' Reply

Defendants reply that Stonelake is mistaken when it states that the insurers subscribing to the Policy consist of Lloyd's London and "10 U.S.-based insurers." (Doc. 16 at 2.) Not only is Lloyd's made up of underwriters which are unincorporated associations who are registered and have their principal place of business within England and Wales, but HDI Global Specialty SE is registered in Germany with its principal place of business in Germany. (*Id*.) "Accordingly, both [Lloyd's] and HDI Global are citizens of foreign signatories to the Convention." (*Id*.)

Second, Defendants contend that Stonelake's argument conflates the Convention and the FAA, and Defendants remind the Court that they are arguing for the applicability of the Convention first and the FAA only in the alternative. (*Id*.)

Defendants next argue that because the Convention is an international treaty, it "unequivocally preempts Louisiana statutory law" including La. R.S. § 22:868. (*Id*. at 3.) But even if this were not the case, "La. R.S. [§] 22:868(D) provides that the prohibition on arbitration clauses in insurance policies does not have any application to surplus lines policies such as the Policy." (*Id.* (quoting the Policy, Doc. 10-1 at 127); *see also* cases cited in support: *id*. at 4, n.9.)

Defendants deny that the Policy is adhesionary and note that Stonelake offers no support for its argument that changed market conditions for coverage alters or eliminates the clear ruling in *Tra-Dor Inc. v. Underwriters at Lloyds London*, No. 21-2997, 2022 WL 3148980 (W.D. La. Jul. 25, 2022) that these kinds of policies are not adhesionary. (*Id*. at 4–6.)

4

Finally, Defendants dispute the applicability of Louisiana's requirement that the Policy include an appraisal clause because first, it only applies to residential policies (Doc. 16 at 8), but, in any event, neither its original or amended versions can be applied retroactively to this Policy, which was entered into and effective before either was enacted. (*Id*. at 7.)

## III. DISCUSSION

### A. Legal Standard

"The Convention is an international treaty that provides citizens of signatory countries the right to enforce arbitration agreements." *Bufkin Enters., L.L.C. v. Indian Harbor Ins. Co*., No. 23-30171, 2024 WL 909600, at *3 (5th Cir. Mar. 4, 2024). *See also Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's London*, No. 18-6192, 2018 WL 4042874, at *3 (E.D. La. Aug. 24, 2018).

> The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk v. Alberto-Culver Co*., 417 U.S. 506, 520 n.15 (1974). *See also Bufkin Enters., L.L.C.*, 2024 WL 909600 at *3.

> In 1970, Congress promulgated the Convention Act, which is Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208, to establish procedures for the courts of the United States to implement the Convention. *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991). "The Convention Act incorporates the FAA except where the FAA conflicts with the Convention Act's few specific provisions." *Id*. (citing 9 U.S.C. § 208).

*Port Cargo Serv., LLC*, 2018 WL 4042874 at *3.

The question in this case is whether the Convention applies to this Policy.

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." *Freudensprung v. Offshore Tech. Servs., Inc*., 379 F.3d 327, 339 (5th Cir. 2004). The Fifth Circuit

> has held that "a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Id*. (quotation omitted). Once these factors have been found to exist in a given case, a district court must order arbitration "unless it finds that the [arbitration] agreement is null and void, inoperative or incapable of being performed." *Id*. (quotation omitted).

*Bopp v. Indep. Specialty Ins. Co.*, 657 F. Supp. 3d 859, 863–64 (E.D. La. 2023).

There is no dispute that there is a written agreement to arbitrate, that the arbitration agreement provides for arbitration in a signatory nation, and that the agreement arises out of a commercial legal relationship. There is no dispute that at least one of the insurers (Certain Underwriters at Lloyd's London) is not an American citizen.[3] Therefore, the Convention facially applies to the Policy.

However, Louisiana law generally prohibits arbitration clauses in insurance contracts. *See* La. R.S. § 22:868 ("No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state . . . shall contain any condition, stipulation, or agreement . . . [d]epriving the courts of this state of the jurisdiction or venue of action against the insurer"). "[T]he McCarran-Ferguson Act permits states to reverse-preempt an otherwise applicable 'Act of Congress' by enacting their own regulations of the insurance industry." *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 431 (5th Cir. 2019), as revised (June 6, 2019). *See also Gen. Mill Supplies, Inc. v. Underwriters at Lloyd's, London*, No. 23-6464, 2024 WL 216924, at *6 (E.D. La. Jan. 19, 2024).

Stonelake argues that the McCarran-Ferguson Act, in conjunction with Louisiana Revised Statute § 22:868, reverse-preempts the FAA and voids the Policy's arbitration agreement. (Doc. 11 at 4.) However, the McCarran-Ferguson Act does not apply to "a treaty, such as the

---

[3] While Defendants are correct that there are nine U.S. based insurers (Doc. 16 at 2) rather than ten, as suggested by Plaintiffs (Doc. 11 at 2), this correction has no bearing on the outcome of the issues before the Court.

6

Convention, which 'remains an international agreement or contract negotiated by the Executive Branch and ratified by the Senate, not by Congress.' " *McDonnel Grp.*, 923 F.3d at 432 (quoting *Safety Nat. Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714, 723 (5th Cir. 2009)). "Although Louisiana law ordinarily prohibits enforcement of arbitration clauses concerning insurance disputes, the Fifth Circuit has held that the Convention . . . supersedes state law." *Gen. Mill Supplies, Inc.*, 2024 WL 216924 at *6. Therefore, the Convention is not reverse-preempted by state law, and arbitration provisions that fall under the Convention are enforceable in Louisiana. *McDonnel Grp.*, 923 F.3d at 432.

### B. Does Stonelake have separate contracts with each insurer?

Stonelake concedes that the Convention and the Policy's arbitration provision apply to the Defendants who are foreign insurers. (Doc. 11 at 5.) However, it argues that it should not apply to the American insurers because the Policy's Contract Allocation Endorsement requires that the Policy "shall be constructed as a separate contract between the insured and each of the Underwriters." (*Id.* at 4 (quoting the Policy's Contract Allocation Endorsement, Doc. 10-1 at 5).) Stonelake insists that because the separate contracts with the American insurance companies are not subject to the Convention, Louisiana law's prohibition against arbitration clauses in insurance contracts applies. (*Id.* at 4–5.)

Numerous cases have held that clauses like this Policy's Contract Allocation Endorsement mean what they plainly say: the insured has a separate contract with each insurer. *See, e.g.*, *City of Kenner v. Certain Underwriters at Lloyd's London*, No. 21-2064, 2022 WL 307295, at *2 (E.D. La. Feb 2, 2022) (interpreting a similar provision to require the contract to be read "not as one contract but as several bound together for convenience and by commonality" and thus "read[ing] the arbitration clause as between each insurer and the [insured]"); *Port*

7

*Cargo Serv., LLC*, 2018 WL 4042874 at *3 (interpreting similar policy language to mean that the policy's [insureds] "have a separate contract with each of the insurers"); *Par. of St. Charles v. HDI Glob. Specialty SE*, No. 22-3404, 2023 WL 1419937, at *3 (E.D. La. Jan. 31, 2023) ("[T]his Court finds that the Parish has a separate contract with each of the Defendants."); *Stor-All Gentilly Woods, LLC v. Indian Harbor Ins. Co.*, No. 23-334, 2023 WL 2585982, at *4 (E.D. La. Mar. 21, 2023) ("[T]his Court finds that [the insured] has a separate contract with each of the [insurers]."). *See also Bufkin Enters., L.L.C.*, 2024 WL 909600 at *3 ("presum[ing]" but deciding that, under similar language, there are separate contracts).

But the analysis does not end here.

**C. Does equitable estoppel apply and require enforcement of the arbitration clause?**

Despite finding that the insured had separate contracts with each insurer, the cases cited above, and others, have held that the arbitration provisions in the respective policies were nonetheless enforceable through application of the doctrine of equitable estoppel.

> Although Plaintiffs may have separate insurance contracts with each insurer, this Court and others in this district have held that equitable estoppel prevents a plaintiff from objecting to arbitration with a domestic insurer when the claims against all defendants, foreign and domestic, are inextricably intertwined – that is, when a plaintiff has alleged substantially interdependent and concerted misconduct (here, improper claims handling) on the part of both the domestic insurer…and the foreign insurer…*Par. of St. Charles v. HDI Glob. Specialty SE*, 2023 WL 1419937, at *4 (E.D. La. Jan. 31, 2023) (discussing and applying *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, ⸺ U.S. ⸺, 140 S. Ct. 1637, 1645, 207 L.Ed.2d 1 (2020) (observing that "nothing in the text of the Convention could be read to otherwise prohibit the application of domestic equitable estoppel doctrines" that permit the enforcement of arbitration agreements by nonsignatories); *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (holding that "equitable estoppel is warranted when [a] signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both nonsignator[ies] and one or more of the signatories to the contract"); *Acad. of the Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, 651 F.Supp.3d 822, 828-31 (E.D. La. Jan. 18, 2023) (applying *Grigson* to hold

8

> that equitable estoppel compels the arbitration of claims made without differentiation among the insurer defendants alleged to have acted interdependently and in concert in the adjustment and evaluation of plaintiff's insurance claims); *Kronlage Family Ltd. P'ship v. Indep. Specialty Ins. Co.*, 651 F.Supp.3d 832, 841-42 (E.D. La. Jan 17, 2023) (applying equitable estoppel to compel arbitration when plaintiff did not differentiate between conduct of foreign and domestic insurers); *City of Kenner v. Certain Underwriters at Lloyd's London*, 2022 WL 16961130, at *3 (E.D. La. Nov. 16, 2022) ("City of Kenner II") (applying *Grigson* to hold that equitable estoppel compels the arbitration of claims made "without differentiation among the insurer defendants" alleged to "have acted interdependently and in concert in the adjustment and evaluation of plaintiff's insurance claims"); *City of Kenner v. Certain Underwriters at Lloyd's, London*, 2022 WL 307295, at *3 (E.D. La. Feb. 2, 2022) (applying *Grigson* to hold that equitable estoppel was warranted to compel arbitration when the plaintiff alleged that defendants collectively insured the property and, without differentiation, received proof of loss but failed to pay out on the damage in bad faith); *Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's London*, 2018 WL 4042874, at *7 (E.D. La. Aug. 24, 2018) (applying *Grigson* to hold that equitable estoppel applied to compel arbitration when claims against foreign and domestic insurers were intertwined since "[a]llowing plaintiffs to proceed in court against the domestic insurers while simultaneously proceeding in arbitration against the foreign insurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration")). Hence, this Court must order arbitration unless it finds that the arbitration agreement in the insurance policy is null and void, inoperative, or incapable of being performed.

*Bopp*, 657 F. Supp. 3d at 864–65. *See also The Concord Condo. Ass'n v. Certain Underwriters at Llyod's London, et al.*, No. 23-833, slip op. (M.D. La. Feb. 2, 2024) (deGravelles, J.), Doc. 19.

In the recent case of *Bufkin Enterprises., L.L.C. v. Indian Harbor Insurance Co.*, No. 23-30171, 2024 WL 909600, at *4–5 (5th Cir. Mar. 4, 2024), the Fifth Circuit made clear that the doctrine of equitable estoppel "is appropriate to compel arbitration under the Convention" when "the signatory to the arbitration agreement [(in this case, Plaintiff)] raises allegations of substantially interdependent and concerted misconduct by both a non-signatory (the domestic insurers) and one or more signatories to the contract (the foreign ones)." *Id.* at *5 (citing *Pontchartrain Nat. Gas Sys.*, 317 So. 3d at 743–45 (citing *Grigson*, 210 F.3d at 527)).

9

In this case, the Court finds that the doctrine of equitable estoppel applies. Like in the cases cited above, Stonelake's Complaint treats all insurers, foreign and domestic, the same and without differentiation. Stonelake "raises allegations of substantially interdependent and concerted misconduct by both a non-signatory (the domestic insurers) and one or more signatories to the contract (the foreign ones)." *Bufkin Enters., L.L.C.*, 2024 WL 909600 at *5.

Specifically, Stonelake charges that "Defendants" failed to tender payment despite having received satisfactory proof of loss (Doc. 1 at 4, ¶ 10); that "Defendants . . . acted in bad faith" in certain specified but undifferentiated ways (*id*. at 4–5, ¶ 11); and demands damages, penalties, attorney's fees, and costs from all Defendants (*id*. at 5, ¶ 12). Stonelake's allegations suggest that all Defendants, acting interdependently and in concert, are liable to it for the same damages, and therefore, the claims are inextricably intertwined. Thus, "[a]llowing plaintiffs to proceed in court against the domestic insurers while simultaneously proceeding in arbitration against the foreign insurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration." *Bopp*, 657 F. Supp. 3d at 865 (quoting *Port Cargo Serv.*, 2018 WL 4042874 at *7).[4] The Court finds the arbitration clause is enforceable.

---

[4] The Court notes that the Supreme Court has recently emphasized that the policy favoring arbitration is not intended to change ordinary rules of procedure or interpretation of contracts to favor arbitration.

> "Th[e] policy," we have explained, "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (internal quotation marks omitted). Or in another formulation: The policy is to make "arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation. See *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218–221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.

### D.   Is the Policy adhesionary?

But Stonelake alleges that the Court should not enforce the arbitration clause because it is adhesionary. (Doc. 11 at 5–6.)

> Under Louisiana law, "a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party," which may "raise a question as to whether or not the weaker party actually consented to the terms." *Aguillard v. Auction Mgmt. Corp.*, 908 So.2d 1, 8–9 (La. 2005) (quotation and citation omitted). The party challenging the contract has the burden of proving its lack of consent. *Id*. at 10. The court focuses on the following factors: "(1) the physical characteristics of the arbitration clause, including font size; (2) the distinguished features of the arbitration clause; (3) the mutuality of the arbitration clause, in terms of the relative burdens and advantages conferred by the clause upon each party; and (4) the relative bargaining strength of the parties." *Georgetown Home Owners Ass'n*, 2021 WL 359735 at *12 (citing *Aguillard*, 908 So.2d at 16–17).

*Stor-All Gentilly Woods, LLC*, 2023 WL 2585982, at *2.

In *Stor-All*, the Court found an insurance contract arbitration provision similar to the one at issue was not adhesionary. *Id*. *See also Edenborn Off. Owners Condo. Ass'n v. Certain Underwriters at Lloyd's London*, No. 23-3546, 2023 WL 8258129, at *5 (E.D. La. Nov. 29, 2023) ("Courts in the Fifth Circuit have consistently rejected the argument that an arbitration clause contained in an insurance contract[] like the one in this case is so adhesionary as to serve as a defense to arbitration under the Convention.")

While Stonelake acknowledges that the Western District of Louisiana found that such a clause was not adhesionary (Doc. 11 at 6 (citing *Tra-Dor Inc. v. Underwriters at Lloyds London*, No. 21-2997, 2022 WL 3148980, at *4 (W.D. La. Jul. 25, 2022)), it argues that "the market for casualty insurance in the State of Louisiana has drastically changed" since *Tra-Dor* was decided

---

*Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Judge Cain stated colorfully that *Morgan* "clipped the wings" of the oft quoted " 'strong federal policy favoring arbitration' created by the FAA . . . ." *Town of Vinton v. Certain Underwriters at Lloyds London*, No. 23-00240, 2023 WL 8655270, at *3 (W.D. La. Dec. 14, 2023). This clarification by the Supreme Court does not, however, gainsay the application of equitable estoppel in this case.

11

giving property owners fewer options to purchase insurance from commercial property insurers. (*Id*. (citing Press Release, Louisiana Department of Insurance, Louisiana Citizens Property Insurance Corp. Increases Commercial Coverage Limits (Nov. 15, 2021), https://ldi.la.gov/news/press-releases/11-15-21-louisiana-citizens-property-insurance-corp-increases-commercial-coverage-limits).)

While the Court is sympathetic to Stonelake's situation and that of others similarly situated, Stonelake has pointed the Court to no authority holding that, even if "drastically changed" market conditions for insurance were established in this record (and the Court finds that it has not been established on the showing made), such would render the contract adhesionary. The Court therefore rejects this argument. The Court finds that on this record, the arbitration clause is not adhesionary and may be enforced. *Stor-All Gentilly Woods, LLC*, 2023 WL 2585982; *Edenborn Off. Owners Condo. Ass'n*, 2023 WL 8258129; *Tra-Dor Inc.*, 2022 WL 3148980.

### E. Does Louisiana's appraisal requirement apply?

Stonelake next contends that it is entitled to the benefit of Louisiana law's requirement that if the insurer and insured "fail to agree as to the amount of loss, either party may demand that the amount of the loss be set by appraisal." (Doc. 11 at 6 (quoting La. R.S. § 22:1892(G)).) Thus, argues Stonelake, it "is entitled under §22:1892(G) to the benefit of an appraisal clause, which should have been made available to it *before* arbitration was invoked." (*Id.* at 7 (emphasis added).) Defendants counter that this provision of Louisiana insurance law applies only to residential policies but, in any event, was passed after the effective date of the Policy and cannot be applied retroactively to it. (Doc. 16 at 7–8.)

The Court agrees with Defendants that La. R.S. § 22:1892(G) cannot be applied retroactively. As the Louisiana Supreme Court has explained, "[T]he legislature's intent as to the retroactive application of a statute must be present in the wording of the Act." *Sher v. Lafayette Ins. Co.*, 2007-2441, (La. 4/8/08); 988 So. 2d 186, 200; *see also* La. R.S. § 1.2 ("No Section of the Revised Statutes is retroactive unless it is expressly so stated."). If the statute does not express whether it should be applied retroactively, the Court need not analyze legislative intent. *Sher*, 988 So. 2d at 200.

In the 2021 legislative session, the legislature amended La. R.S. § 22:1892, adding La. R.S. § 22:1892(G) and specifying that it would have effect "on or after January 1, 2022." 2021 La. Acts 345. In including the language "on or after January 1, 2022," the legislature expressed in the wording of the statute its intent for § La. R.S. § 22:1892(G) (2021) to not have a retroactive application. The issue here, however, is that in the 2022 legislative session, the legislature amended La. R.S. § 22:1892(G) (2021) to remove the phrase "on or after January 1, 2022." *See* 2021 La. Acts 345; 2022 La. Acts 559. Thus, the Court must determine whether La. R.S. § 22:1892(G) (2022) should have a retroactive application absent the legislature's expressed intent in the wording of the statute.

"In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." La. Civ. Code art. 6. "Substantive laws establish new rules, rights, and duties or change existing ones." *Segura v. Frank*, 93-1271, (La. 1/14/94); 630 So. 2d 714, 723. "Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws." *Id.* "Interpretive laws merely establish the meaning the interpreted statute had from the time of its enactment." *Id.*

13

The Court finds the 2022 amendment to § La. R.S. § 22:1892(G) to be substantive. By enacting Subsection G during the 2021 legislature and mandating that residential insurance policies have an appraisal clause, the legislature established a new rule and duty, thus making it a substantive law. The 2022 legislature amending Subsection G to remove the language "on or after January 1, 2022" did not transform Subsection G into a procedural or interpretive law. Removing this phrase "on or after January 1, 2022" did not "prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws" or "merely establish the meaning the interpreted statute had from the time of its enactment." *Segura*, 630 So. 2d at 723. As such, § La. R.S. § 22:1892(G) (2022) is a substantive amendment, and the Court cannot give it a retroactive application.

However, the Court holds, regardless of whether La. R.S. § 22:1892(G) can be applied retroactively to this case, principles of equitable estoppel apply equally to this issue so as to preempt the application of Louisiana's appraisal requirement. The Court first notes that when the Convention applies, Louisiana law is preempted. *McDonnel Grp.*, 923 F.3d at 431–32. While it is true that, given the Policy's Contract Allocation Endorsement, each insurer is deemed to have a separate contract with the insured, it is also true that the principles of equitable estoppel apply where a plaintiff's allegations against both foreign and domestic insurers are inextricably intertwined, as they are here. Applying that doctrine to this issue, allowing Stonelake to require appraisal "against the domestic insurers while simultaneously proceeding in arbitration against the foreign insurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration." *See Port Cargo Serv.*, 2018 WL 4042874 at *7.

14

Given the Court's holding that regardless of whether La. R.S. § 22:1892(G) is retroactive, the principles of equitable estoppel apply equally as to preempt the application of Louisiana's appraisal requirement, the Court need not determine the issue of whether La. R.S. § 22:1892(G) applies only to residential policies.

### F. Does Louisiana law prohibiting mandatory arbitration clauses in insurance contracts apply to surplus lines policies?

This Policy provides for surplus lines coverage. (Doc. 10-1 at 127.) Defendants argue in the alternative that, even if La. R.S. § 22:868's prohibition of arbitration clauses in insurance contracts was not precluded by equitable estoppel, the prohibition would not apply to surplus line policies like this one. (Doc. 16 at 3–4 (citing La. R.S. § 22:868(D)).)

Because the Court has concluded that equitable estoppel applies in this case, it is not necessary to decide the issue of whether surplus lines insurance policies like this one are excepted from Louisiana's reverse-preemption rule by virtue of La. R.S. § 22:868(D). *See Bufkin Enters., L.L.C.*, 2024 WL 909600 at *5 (finding the arbitration clause enforceable based on equitable estoppel and therefore refusing to certify to the Louisiana Supreme Court the question of "[w]hether La. R.S. § 22:868 prohibits the enforcement of arbitration clauses in insurance contracts for surplus lines insurers") However, the Fifth Circuit has recently decided this issue.

Although La. R.S. § 22:868(A)(2) generally prohibits insurance contracts from including arbitration clauses that deprive Louisiana courts of jurisdiction or venue over any action against an insurer, La. R.S. § 22: 868(D) states that "Subsection A of this Section shall not prohibit a *forum or venue selection clause* in a policy form that is not subject to approval by the Department of Insurance." La. R.S. § 22: 868(D) (emphasis added). Surplus lines insurers' forms are not subject to approval by the Louisiana Department of Insurance, except as provided in La. R.S. § 22:1456(B)(2) relative to public carrier vehicles. La. R.S. § 22:446(A). If the arbitration

15

clause in a surplus lines policy is a forum or venue selection clause, the clause would be subject to the carve out found in La. R.S. § 22:868(D) and therefore not be subject to the prohibition found in La. R.S. § 22:868(A)(2).

The Court in *Indian Harbor Ins. Co. v. Belmont Commons, L.L.C.*, No. 23-30246, 2024 WL 962376, at *3 (5th Cir. Mar. 6, 2024) noted that "[t]he Louisiana Supreme Court has not addressed the question, and it recently declined to answer a question certified to it by the Eastern District of Louisiana that would have resolved the matter." *Id*. (citing *Southland Circle, LLC v. Indep. Specialty Ins. Co.*, 23-900 (La. 10/3/23); 370 So. 3d 1047). But the court also noted that the Louisiana Supreme Court had "recently characterized arbitration clauses as 'a type of venue selection clause.'" *Id*. at *4 (citing *Donelon v. Shilling*, 19-514 (La. 4/27/20); 340 So. 3d 786, 790 n.6) (other citations omitted). Therefore, in making its *Erie* guess, the Fifth Circuit concluded:

> Given that the Louisiana Supreme Court has characterized arbitration clauses as a type of venue selection clause, we conclude that the carve-out contained in La. R.S. § 22:868(D) unambiguously includes arbitration clauses. Moreover, including arbitration clauses in the carve-out does not lead to absurd consequences; La. R.S. § 22:868(D) provides a measure of flexibility to surplus lines insurers—who by definition are willing to insure risks and provide coverage for consumers who cannot get coverage in the standard market—by exempting them from the strictures of La. R.S. § 22:868(A). Since the Insurers are all surplus lines insurers and the Policy is a surplus lines policy, all of the Insurers may enforce the Policy's arbitration clause, La. R.S. § 22:868(A) notwithstanding.

*Id.*

Therefore, even if equitable estoppel did not apply, Defendants' Motion would be granted.

**G.   Should stay be granted?**

9 U.S.C. § 3 states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The Court finds that a stay is warranted. Defendant's motion to stay is granted, and this matter is stayed pending the outcome of arbitration.

## IV.   CONCLUSION

For the foregoing reasons, the *Motion to Compel Arbitration and Stay the Proceedings* (Doc. 8) brought by Certain Underwriters at Lloyd's London, Indian Harbor Insurance Company, Lexington Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, United Specialty Insurance Company, General Security Indemnity Company of Arizona, HDI Global Specialty SE, Old Republic Union Insurance Company, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company is **GRANTED**, and this matter is **STAYED** pending the outcome of arbitration.

Signed in Baton Rouge, Louisiana, on <u>March 27, 2024</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**